## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIO CHRISTIAN,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:20-cv-1842** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **MARK GARMAN,** *et al.*, | : | |
| **Defendants** | : | |

### MEMORANDUM

This matter is before the Court pursuant to Defendants' motion to dismiss (Doc. No. 19) *pro se* Plaintiff Julio Christian ("Plaintiff")'s complaint (Doc. Nos. 1, 4). The motion is fully briefed and ripe for disposition.

## I.    BACKGROUND

On June 30, 2020, Plaintiff who is currently detained at the State Correctional Institution Rockview in Bellefonte, Pennsylvania ("SCI Rockview"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Pennsylvania against Defendants Mark Garman ("Garman"), Major Nike ("Nike"), Major Halderman ("Halderman"), Major Selfrige ("Selfridge"), Sergeant Jodon ("Jodon"), Sergeant Witmer ("Witmer"), Mr. Eby ("Eby"), and Rich Ellers ("Ellers"). (Doc. No. 1.) Plaintiff subsequently filed a motion for leave to proceed *in forma pauperis* (Doc. No. 5) and a motion for leave to amend his complaint to add Governor Tom Wolf ("Wolf") as a Defendant (Doc. No. 4). In an Order dated October 7, 2020, the

Eastern District of Pennsylvania transferred the matter to this Court for further proceedings.  (Doc. No. 9.)  In an Order dated October 8, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis* and granted his motion for leave to amend, deeming the operative pleading to consist of Doc. Nos. 1 and 4.  (Doc. No. 12.)

In his complaint, Plaintiff takes issue with the restrictions and quarantine imposed by the Department of Corrections ("DOC") in response to the COVID-19 pandemic.  (Doc. No. 1.)  Specifically, Plaintiff asserts that he and other inmates at SCI Rockview have been deprived of access to the exercise yard, prison chapel, and law library.  (*Id.*)  Inmates are required to wear masks when they are outside of their cells.  (*Id.*)  Access to the exercise yard has been reduced to once every other day, and is limited to groups of no more than ten (10) inmates at a time.  (*Id.*)  This same principle has been applied to the law library.  (*Id.*)  Plaintiff avers that as of April 10, 2020, sixteen (16) corrections officers were infected with COVID-19.  (*Id.*)  He alleges that he is at substantial risk of harm because contaminated air can enter his cell whether he wears a mask or not.  (*Id.*)  Plaintiff also maintains that he requires single cell status to avoid future harm.  (*Id.*)  Based on the foregoing, Plaintiff asserts

violations of his First, Fifth,[1] Eighth, and Fourteenth Amendment rights.  (*Id.*)  He seeks injunctive and declaratory relief.  (*Id.*)

## II.    LEGAL STANDARD

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading."  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  *Id.*  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer

---

[1] Plaintiff asserts that Defendants' actions have violated his rights under the Fifth Amendment's Due Process Clause.  That clause, however, "only applies to federal officials."  *See Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013).  In the instant case, Plaintiff has not sued any federal officials.  Plaintiff, however, has sued state officials and, therefore, may rely upon the Fourteenth Amendment's Due Process Clause, which applies to acts committed under color of state law.  *See B&G Const. Co. v. Dir., Officers of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011).

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).   A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"

4

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed.

2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.

2002) (noting that when considering a motion to dismiss, courts may consider

"documents whose contents are alleged in the complaint and whose authenticity no

party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be

mindful that a document filed *pro se* is "to be liberally construed."  *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976).  A *pro se* complaint, "however inartfully pleaded,"

must be held to "less stringent standards than formal pleadings drafted by lawyers"

and can only be dismissed for failure to state a claim if it appears beyond a doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

**B.**   **Civil Rights Statute, 42 U.S.C. § 1983**

Section 1983 is the vehicle by which private citizens may seek redress for

violations of federal constitutional rights committed by state officials.  *See* 42 U.S.C.

§ 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*   "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)).   To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

### A.   Claims Against Defendant Wolf

Plaintiff names Governor Wolf as a Defendant, noting that he was personally involved by ordering all state prisons to lockdown.   (Doc. No. 4 at 1.)   Defendant Wolf asserts that he should be dismissed for lack of personal involvement.   (Doc. No. 20 at 11.)   The Court agrees.   For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009).   Plaintiff's allegation is insufficient to plead personal involvement.   In *Rode*,

6

the Third Circuit stated: "In a large state employing many thousands of employees, a contrary holding [concluding that the Governor has personal knowledge] would subject the Governor to potential liability in any case in which an aggrieved [individual] merely transmitted a complaint to the Governor's office of administration or to the Lieutenant Governor's office." *Rode*, 845 F.2d at 1208; *see also Hampton v. Wetzel*, No. 1:15-cv-897, 2015 WL 2405062, at *2 (M.D. Pa. May 20, 2015) (Governor dismissed where the inmate-plaintiff "merely allege[d] that he sent letters to defendants Corbett and Wolf expressing his dissatisfaction with the DOC and the parole board"). The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's claims against Defendant Wolf.

### B.   First Amendment Claims

#### 1.   Retaliation

In his complaint, Plaintiff asserts that he is raising a First Amendment retaliation claim. (Doc. No. 1 at 19.) He vaguely suggests that he was punished for exercising "his First Amendment right to seek redress by filing a lawsuit against said prison officials." (*Id.* at 12.)

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some

'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

8

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

The Court agrees with Defendants that Plaintiff's complaint fails to set forth a plausible retaliation claim. The complaint fails to set forth facts suggesting that Plaintiff was engaged in constitutionally protected activity, that he suffered adverse action, and that the protected activity was the substantial or motivating cause of the adverse action. Plaintiff's complaint, as pled, "does nothing more than set forth a threadbare recital of the [requirements] necessary to establish a retaliation claim." *Nifas v. Serrano*, No. 1:19-cv-1646, 2020 WL 905583, at *4 (M.D. Pa. Feb. 25, 2020).

In his brief in opposition to Defendants' motion, Plaintiff avers that a "correctional officer by the name 'Wixor' retaliated against Plaintiff during time when activities [were] being called in the gym." (Doc. No. 34 at 6.) Plaintiff avers that Wixor issued a misconduct charging Plaintiff with being in an unauthorized area. (*Id.*) He indicates that the misconduct was later "thrown out" by the Unit

Manager.  (*Id.*)  Plaintiff also states that Block Sergeant Breese retaliated against him when Plaintiff asked about yard time and Sergeant Breese rudely told him to return to his cell.  (*Id.*)  Plaintiff also maintains that prison officials retaliated against him during yard time by sending him back to the block "all because he runs track, and wanted to run the entire track."  (*Id.*)  It is well-settled, however, that a plaintiff cannot amend his complaint in a brief opposing a motion to dismiss.  *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  Plaintiff has not named Wixor and Breese as defendants in this matter, and nothing in the complaint suggests that the named Defendants were personally involved in the alleged retaliatory actions.

Even if Plaintiff's allegations were properly before the Court, he has failed to set forth plausible retaliation claims.  Even if Plaintiff was engaged in constitutionally protected activity on all three (3) occasions, he has failed to allege sufficient adverse action to satisfy the second prong of a retaliation claim.  To be actionable under § 1983, the adverse action "need not be great" but "must be more than *de minimis*."  *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006).  The actions taken by Sergeant Breese and prison officials by telling Plaintiff to return to his cell and block are simply too *de minimis* to constitute adverse action.  *See, e.g.*, *Burgos v. Canino*, 358 F. App'x 302, 307 (3d Cir. 2009) (concluding that denial of recreation period did not rise to the level of adverse action).  Moreover, even though Plaintiff

10

alleges that Officer Wixor issued a misconduct, he alleges that the misconduct was later "thrown out." (Doc. No. 34 at 6.) A misconduct that is dismissed without penalty does not amount to adverse action for purposes of a retaliation claim. *See Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's First Amendment retaliation claims.

### 2. Access to the Courts

It is well-settled that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). "In order to state a claim of the denial of access to the courts, a prisoner such as [Plaintiff] must allege that his efforts to pursue a legal claim were hindered and he suffered an actual injury." *Ross v. Clerk of Courts of Court of Common Pleas of Philadelphia*, 726 F. App'x 864, 865 (3d Cir. 2018) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). "[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). A complaint raising an access to the courts claim "must describe the underlying claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Christopher v. Harbury*, 536 U.S. 403, 416-18 (2002).

In his complaint, Plaintiff suggests that because of the restricted access to the law library, he was "unable to file his claim for release involving violation of civil rights, held unlawfully, in absence of a valid criminal record or case." (Doc. No. 1 at 11.) Plaintiff references *Christian v. City of Phila.*, No. 2:20-cv-1424, "of which Third Circuit Court of Appeals has jurisdiction." (*Id.*) Plaintiff's complaint, as pled, fails to set forth a plausible access to the courts claim. Plaintiff fails to allege any facts about the merits of his underlying civil claims, let alone allege that he suffered an actual injury. *See Presbury v. Wetzel*, 789 F. App'x 294, 295 (3d Cir. 2020) (concluding same). The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's First Amendment access to the courts claim.[2]

---

[2] The Court has located *Christian v. City of Phila.*, No. 2:20-cv-1424, using the PACER system. Plaintiff initiated that matter in the United States District Court for the Eastern District of Pennsylvania on March 12, 2020 by filing a complaint against the City of Philadelphia, "Criminal Justice Center," 39th District Police Department, City Police Department at 8th and Race, Chief of Police, Judge Theodore McKee, Lynne Abraham, and "Local Government." In his complaint, Plaintiff alleged that on January 19, 1985, the Philadelphia Police illegally entered his residence and violated his Fourth Amendment rights. Plaintiff claimed that he had been falsely imprisoned ever since. On October 19, 2020, the Eastern District of Pennsylvania denied Plaintiff's motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(g) because Plaintiff had accrued three strikes and had not demonstrated that he was in imminent danger of serious physical injury at the time he brought his complaint. *Christian v. City of Phila.*, No. 2:20-cv-1424, 2020 WL 6131243, at *3 (E.D. Pa. Oct. 19, 2020). The court directed Plaintiff to pay the filing fee within thirty (30) days. *Id.* A review of PACER indicates that Plaintiff did not pay the filing fee, and on January 27, 2021, the action was dismissed without prejudice for failure to prosecute. Contrary to Plaintiff's argument, he did not appeal to the United States Court of Appeals for the Third Circuit. Plaintiff fails to allege how the restrictions on law library access hindered his ability to prosecute that action when it was dismissed because of his failure to pay the filing fee. *See Heath v. Link*, 787 F. App'x 133, 136 (3d Cir. 2019) (concluding same regarding access to legal materials).

### 3.     Free Exercise of Religion

The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion."). However, in order to state a plausible claim, a plaintiff must allege a "substantial burden" on the exercise. *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981). Moreover, while inmates retain certain protections, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone*, 482 U.S. at 348 (quotations omitted).

In his complaint, Plaintiff alleges that officials at SCI Rockview have limited attendance at religious services to ten (10) inmates or less in response to the COVID-19 pandemic. (Doc. No. 1 at 3.) In his brief in opposition, he acknowledges that inmates have received video services, but he argues that "a video religious service was inadequate to prayer-worship." (Doc. No. 35 at 5.) Plaintiff has simply not plausibly alleged that his religious exercise has been substantially burdened by Defendants' actions due to the pandemic. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's First Amendment free

13

exercise of religion claim.

## C.   Eighth Amendment Claims

### 1.   Conditions of Confinement[3]

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, "[s]ome conditions of

---

[3] Plaintiff also suggests that the restrictions and conditions implemented, including mask wearing, constitute a use of force. (Doc. No. 1 at 7.) The Court does not agree. The inquiry for an Eighth Amendment excessive force claim is whether officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *see also Fuentes v. Wagner*, 206 F.3d 335, 345 (3d Cir. 2000). Plaintiff has not cited, and the Court has not located, any authority suggesting that such measures constitute a use of force.

confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

In the instant case, Defendants do note dispute that the COVID-19 pandemic constitutes a substantial risk of harm to inmates.  (Doc. No. 20 at 8-9.)  The Court agrees with Defendants, however, that Plaintiff has not plausibly alleged facts indicating that Defendants were deliberately indifferent to that risk of harm.  Nothing in the complaint suggests that Defendants have consciously ignored the threat posed by the virus.  Rather, at various points throughout the complaint, Plaintiff alleges that Defendants have overstepped via many of the measures they have implemented to curb spread of the virus.  In other points, Plaintiff appears to suggest that they have not done enough.  The Court, however, "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, the defendants here acted unreasonably by 'doing their best.'" *Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020).

Plaintiff maintains that the limitations on access to the exercise yard violate the Eighth Amendment because inmates can only access the yard every other day and may only do so in cohorts of up to ten (10) inmates.  (Doc. No. 1.)  Plaintiff also

suggests that he does not have sufficient space to exercise in his cell.  (Doc. No. 34 at 4.)  Plaintiff, however, does not allege facts suggesting that the limitations on exercise have threatened his health and, therefore has failed to state a constitutional violation.  *See Gattis v. Phelps*, 344 F. App'x 801, 805 (3d Cir. 2009) (determining that the prisoner was not guaranteed outdoor exercise at all times and that the limitation of exercise to three (3) days per week was insufficiently serious to implicate the Eighth Amendment).

Plaintiff also suggests that he has an interest in receiving a "basic snack bag daily in part of a nutritional diet ordered by the doctor and may not be deprived of basic need[s] such as food."  (Doc. No. 34 at 1.)  Plaintiff, however, does not allege facts suggesting that the named Defendants have personally deprived him of the daily snack bag.  Moreover, while inmates have a right to a nutritionally adequate diet, *see Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008), they have no constitutional right to be served a particular type of meal.  *See Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990).   Here, Plaintiff alleges no facts plausibly suggesting that the lack of a daily snack bag has deprived him of a nutritionally adequate diet.

Plaintiff also suggests that Defendants violated his Eighth Amendment rights when they placed an inmate who had recently been released from the RHU, where several new COVID-19 cases had been reported, in his cell.  (Doc. No. 34 at 2.)

16

Plaintiff, however, has provided no facts suggesting that the inmate had actually tested positive for COVID-19 prior to be placed in his cell. Plaintiff's "speculation about the mere possibility that he will become infected does not rise to the level of an Eighth Amendment violation." *McKissic v. Barr*, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D. Mich. June 29, 2020).

Overall, the Court concludes that Plaintiff has failed to state an Eighth Amendment conditions of confinement claim because he simply has failed to allege that Defendants knew of and disregarded the risks posted by COVID-19. *See Wylie v. Bonner*, No. 2:20-cv-2593, 2021 WL 261280, at *4-6 (W.D. Tenn. Jan. 26, 2021) (concluding same); *Shokr v. LeBlanc*, No. 20-488, 2020 WL 8093228, at *4-5 (M.D. La. Dec. 14, 2020 (concluding that the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because measures were being taken to combat the COVID-19 virus). The "Eighth Amendment does not require perfection on the part of prison officials." *Wylie*, 2021 WL 261280, at *6. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment conditions of confinement claims.

### 2. Denial of Medical Care

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth

Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official

. . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serous medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.* Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10. Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth

19

Amendment claim.  *See Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-25 (7th Cir. 1996); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

In his complaint, Plaintiff alleges that an unknown nurse refused to refer him to a doctor for care for his chronic tendonitis/trigger finger.  (Doc. No. 1 at 16.) According to Plaintiff, he submitted a sick call request to receive a Cortizone injection.  (*Id.*)  A nurse came to Plaintiff's cell, and when Plaintiff told her what was wrong, she told Plaintiff that he would not receive the injection.  (*Id.*)  In his brief in opposition, Plaintiff alleges that it was the medical department's supervisor who is responsible for the actions of the nurse.  (Doc. No. 34 at 2.)

Defendant Ellers is the only named medical Defendant in the above-captioned case.  Plaintiff, however, fails to allege facts suggesting that Defendant Ellers was personally involved in the denial of medical care.  Moreover, even assuming that Defendant Ellers was the one who supervised the nurse in question, he cannot be held liable under § 1983 on the traditional standard of *respondeat superior*.  *See*

*Santiago*, 629 F.3d at 128.  The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim concerning the denial of medical care.

### D.    Fourteenth Amendment Claims

#### 1.    Equal Protection

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Traditionally, "[i]n order to establish a *prima facie* case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002).  However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim.  *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008).  To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment.  *See id.*  "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the

difference in treatment." *Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice. *See Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

In his complaint, Plaintiff vaguely suggests that his equal protection rights were violated because inmates from another housing unit were allowed to use the track while he and others on his housing unit were not.  In his brief in opposition, Plaintiff claims that "discriminatory motives impelled discriminatory treatment of him concerning movement during lockdowns." (Doc. No. 34 at 4.)  He asserts that Defendant Jodon allowed other inmates on the track, but not him.  (*Id.*)  Plaintiff, however, has not pled any facts suggesting that Defendant Jodon or any other named Defendants intentionally treated his differently from other similarly situated inmates. Plaintiff's allegations, at this time, amount to nothing more than conclusory language and bald assertions.  *Young*, 160 F. App'x at 266.  The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Fourteenth Amendment equal protection claim.

### 2.    Due Process

Plaintiff suggests that his due process rights have been violated because he has a "general liberty interest in movement outside of [his] cell." (Doc. No. 1 at 12.) In his brief in opposition, Plaintiff also maintains that he has a liberty interest in being assigned to a single cell.  (Doc. No. 34 at 1.)  The Third Circuit has held, however, that denying a prisoner's request for a Z-code status for a single cell is not a due process violation. *See Thomaston v. Meyer*, 519 F. App'x 118, 119 (3d Cir. 2013).  Plaintiff, therefore, cannot maintain a due process claim based upon Defendants' refusal to assign him such status.  Likewise, while Plaintiff has certainly been spending more time in his cell due to restrictions imposed in light of the COVID-19 pandemic, restricting movement "for the purpose of ensuring the security and integrity of the . . . prison facility . . . 'falls within the expected perimeters of the sentence imposed' on the" prisoner, and therefore does not amount to a violation of the Eighth and Fourteenth Amendments. *Ebersole v. Wagner*, No. 99-4526, 1999 WL 1241079, at *1 (E.D. Pa. Dec. 20, 1999) (citing *Sandin v. Connor*, 515 U.S. 472, 485 (1996)).  The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Fourteenth Amendment due process claims.

### D.    Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.*  The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing discussion, the Court concludes that it would be futile to grant Plaintiff leave to file an amended complaint with respect to: (1) his claims against Defendant Wolf; (2) his First Amendment retaliation and access to the courts claims; (3) his Eighth Amendment claims concerning the conditions of confinement imposed as a result of the COVID-19 pandemic; and (4) his Fourteenth Amendment due process claims.  At this time, however, the Court cannot conclude that it would

be futile to permit Plaintiff leave to file an amended complaint as to: (1) his Eighth Amendment claims regarding denial of medical care, denial of recreation, and denial of a daily snack bag; and (2) his Fourteenth Amendment equal protection claims. Plaintiff will, therefore, be granted leave to file an amended complaint as to such claims.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss (Doc. No. 19).  Plaintiff will be granted leave to file an amended complaint with respect to: (1) his Eighth Amendment claims regarding denial of medical care, denial of recreation, and denial of a daily snack bag; and (2) his Fourteenth Amendment equal protection claims.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: March 17, 2021