# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIO CHRISTIAN,<br>**Plaintiff** | : <br> : <br> : | |
| v. | : <br> : | No. 1:20-cv-1842 <br><br> (Judge Rambo) |
| MARK GARMAN, *et al.*,<br>**Defendants** | : <br> : <br> : | |

## **MEMORANDUM**

This matter is before the Court pursuant to Defendants Rich Ellers ("Ellers"), Ms. Taylor ("Taylor"), Mr. Weaver ("Weaver"), and John Wetzel ("Wetzel)"s motion to dismiss (Doc. No. 42) *pro se* Plaintiff Julio Christian ("Plaintiff")'s amended complaint (Doc. No. 38). For the following reasons, the Court will grant the motion to dismiss.

## I. BACKGROUND

On June 30, 2020, Plaintiff, who is currently detained at the State Correctional Institution Rockview in Bellefonte, Pennsylvania ("SCI Rockview"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Pennsylvania against Defendants Mark Garman ("Garman"), Major Nike ("Nike"), Major Halderman ("Halderman"), Major Selfrige ("Selfridge"), Sergeant Jodon ("Jodon"), Sergeant Witmer ("Witmer"), Mr. Eby ("Eby"), and Ellers. (Doc. No. 1.) Plaintiff

subsequently filed a motion for leave to proceed *in forma pauperis* (Doc. No. 5) and a motion for leave to amend his complaint to add Governor Tom Wolf ("Wolf") as a Defendant (Doc. No. 4). In an Order dated October 7, 2020, the Eastern District of Pennsylvania transferred the matter to this Court for further proceedings. (Doc. No. 9.) In an Order dated October 8, 2020, the Court granted Plaintiff leave to proceed *in forma pauperis* and granted his motion for leave to amend, deeming the operative pleading to consist of Doc. Nos. 1 and 4. (Doc. No. 12.)

In his complaint, Plaintiff took issue with the restrictions and quarantine imposed by the Department of Corrections ("DOC") in response to the COVID-19 pandemic. (Doc. No. 1.) Specifically, Plaintiff asserted that he and other inmates at SCI Rockview have been deprived of access to the exercise yard, prison chapel, and law library. (*Id.*) Inmates are required to wear masks when they are outside of their cells. (*Id.*) Access to the exercise yard has been reduced to once every other day, and is limited to groups of no more than ten (10) inmates at a time. (*Id.*) This same principle has been applied to the law library. (*Id.*) Plaintiff averred that as of April 10, 2020, sixteen (16) corrections officers were infected with COVID-19. (*Id.*) He alleged that he is at substantial risk of harm because contaminated air can enter his cell whether he wears a mask or not. (*Id.*) Plaintiff also maintained that he requires single cell status to avoid future harm. (*Id.*) Based on the foregoing, Plaintiff asserted violations of his First, Eighth, and Fourteenth Amendment rights.

(*Id.*) He sought injunctive and declaratory relief. (*Id.*)

Defendants filed a motion to dismiss on December 4, 2020. (Doc. No. 19.) In a Memorandum and Order dated March 17, 2021, the Court granted the motion to dismiss. (Doc. Nos. 36, 37.) The Court dismissed with prejudice Plaintiff's claims against Defendant Wolf, his First Amendment retaliation and access to the courts claims, his Eighth Amendment claims concerning conditions of confinement imposed as a result of the COVID-19 pandemic, and his Fourteenth Amendment due process claims. (*Id.*) The Court dismissed without prejudice Plaintiff's Eighth Amendment claims regarding denial of medical care, denial of recreation, and denial of a daily snack bag, and his Fourteenth Amendment equal protection claims. (*Id.*) The Court granted Plaintiff leave to file an amended complaint with respect to the claims dismissed without prejudice within thirty (30) days. (*Id.*)

Plaintiff filed his amended complaint on April 7, 2021. (Doc. No. 38.) He avers that on April 26, 2020, he submitted a sick call slip requesting a cortisone injection for tendonitis in his hand. (*Id.* at 5.) Defendant Taylor came to his cell two (2) days later to ask what was wrong. (*Id.*) Plaintiff told her that he was having pain in his hand. (*Id.*) Defendant Taylor left and then returned to tell Plaintiff that he would not be receiving a cortisone injection. (*Id.*) Plaintiff avers that Defendant Ellers, as the Corrections Health Care Administrator ("CHCA"), was responsible for approving or denying all medical care. (*Id.*)

3

Plaintiff also claims that on March 26, 2020, SCI Rockview went on lockdown, causing a denial of recreation. (*Id.* at 6.) Plaintiff avers that the lockdown was imposed by order of Defendant Wetzel. (*Id.*) He claims that he was unable to engage in "running exercise" in his cell because of the lack of adequate space and that his blood pressure began to rise. (*Id.*) Plaintiff maintains that the lockdown and denial of recreation occurred for ten (10) months. (*Id.*)

Finally, Plaintiff maintains that he was denied his daily snack bag on ten (10) occasions in October and November of 2020. (*Id.* at 7.) He avers that Defendant Weaver, as the culinary supervisor, was responsible for ensuring that he received his snack bag. (*Id.*) Plaintiff claims that he went to bed hungry on these nights. (*Id.*) Based on the foregoing, Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights. He seeks injunctive relief as well as damages. (*Id.* at 9.)

## II. LEGAL STANDARD

### A. Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*,

4

pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters

5

of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## B. Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

### A. Eighth Amendment Claims

#### 1. Denial of Adequate Medical Care

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at

842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serous medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.* Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10. Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-25 (7th Cir. 1996); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

In his amended complaint, Plaintiff avers that on April 26, 2020, he submitted a sick call slip requesting a cortisone injection for tendonitis in his hand. (Doc No. 38 at 5.) Defendant Taylor came to his cell two (2) days later to ask what was wrong. (*Id.*) Plaintiff told her that he was having pain in his hand. (*Id.*) Defendant Taylor left and then returned to tell Plaintiff that he would not be receiving a cortisone

injection. (*Id.*) Plaintiff avers that Defendant Ellers, as the CHCA, was responsible for approving or denying all medical care. (*Id.*)

The Third Circuit has concluded that CHCAs are "administrators, [a]nd not doctors." *See Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005). Thus, for Plaintiff to state a claim against Defendant Ellers, Plaintiff must allege that Defendant Ellers possessed actual knowledge or a reason to believe that "prison doctors or their assistants [were] mistreating (or not treating)" him. *See Spruill*, 372 F.3d at 236. Plaintiff's sole allegation is that Defendant Ellers is responsible for approving or denying all medical care. Nowhere in his amended complaint has Plaintiff suggested that Defendant Ellers know or had reason to believe that medical staff were mistreating or not treating Plaintiff. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim regarding denial of adequate medical care against Defendant Ellers.

Furthermore, assuming that Plaintiff's tendonitis constitutes a serious medical need, the Court agrees with Defendants that Plaintiff has failed to set forth a plausible Eighth Amendment claim against Defendant Taylor. Plaintiff's amended complaint amounts to, at most, a disagreement with the decision to not provide a certain type of treatment—a cortisone injection—for his tendonitis. Such a disagreement is insufficient to maintain an Eighth Amendment claim against Defendant Taylor. *See Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing *Estelle*, 429 U.S. at

105-06). Plaintiff's amended complaint is devoid of any allegations that Defendant Taylor "intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon" him." *Mancebo v. Steinhart*, No. 3:17-cv-2046, 2018 WL 3431475, at *3 (M.D. Pa. July 16, 2018). Plaintiff's allegations, at most, rise to the level of negligence, which is insufficient to maintain an Eighth Amendment claim. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Defendant Taylor.

### 2. Denial of Recreation

Plaintiff claims that on March 26, 2020, SCI Rockview went on lockdown, causing a denial of recreation. (Doc. No. 38 at 6.) Plaintiff avers that the lockdown was imposed by order of Defendant Wetzel. (*Id.*) He claims that he was unable to engage in "running exercise" in his cell because of the lack of adequate space and that his blood pressure began to rise. (*Id.*) Plaintiff maintains that the lockdown and denial of recreation occurred for ten (10) months. (*Id.*)

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015), *abrogated in part on other grounds by Mack v. Yost*, 968

F.3d 311 (3d Cir. 2020). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347). To determine whether a deprivation of outdoor exercise amounts to a sufficiently serious deprivation under the Eighth Amendment, "courts should consider the totality of the circumstances, including, but not limited to, the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation." *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017).

Although Plaintiff alleges that his blood pressure increased because he was

13

unable to run inside his cell during the lockdown, he has failed to set forth a plausible claim against Defendant Wetzel. It appears that Plaintiff seeks to proceed against Defendant Wetzel because of his position as Secretary of the DOC. For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009). Therefore, supervisors cannot be liable under § 1983 on the traditional standard of *respondeat superior*. *See Santiago*, 629 F.3d at 128. Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In the instant case, Plaintiff's amended complaint fails to set forth a plausible supervisory liability claim against Defendant Wetzel. He has pled no facts suggesting that Defendant Wetzel participated in or had knowledge of and

14

acquiesced in the alleged violation of his rights. Moreover, while Plaintiff suggests that the lockdown policy caused the denial of recreation, Plaintiff has alleged no facts suggesting that Defendant Wetzel was personally involved in the lockdown at SCI Rockview and has alleged no facts suggesting that he was deliberately indifferent to any consequences of such policy. *See A.M.*, 372 F.3d at 586. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment denial of recreation claim.

### 3. Denial of Snack Bags

Plaintiff maintains that he did not receive a daily snack bag on ten (10) separate occasions in October and November 2020 and attributes this to being placed in quarantine because of the COVID-19 pandemic. (Doc. No. 38 at 7.) Plaintiff suggests that as culinary supervisor, Defendant Weaver was responsible for ensuring that he received his snack bag. (*Id.*) Plaintiff claims that he went to bed hungry on these occasions. (*Id.*)

The Eighth Amendment requires that inmates be provided a nutritionally adequate diet. *See Laufgas v. Speziale*, 263 F. App'x 192, 198 (3d Cir. 2008). In determining whether an Eighth Amendment violation has occurred, "[c]ourts consider the amount and duration of the deprivation of food." *Lockamy v. Rodriguez*, 402 F. App'x 950, 951 (5th Cir. 2010) (concluding that the deprivation of six (6) meals in a 54-hour period was insufficient to state a claim absent an

allegation of injury as a result of missing meals). Plaintiff, however, does not allege that he suffered any harm, other than hunger, from the denial of snack bags. Plaintiff's bare allegations of hunger, however, are insufficient to establish the requisite level of seriousness for an Eighth Amendment claim. *See id.* at 951-52; *see also Pitsenbarger v. Hutcheson*, No. 7:13-cv-206, 2013 WL 2181270, at *3 (W.D. Va. May 20, 2013). The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim regarding the denial of snack bags.

### B. Fourteenth Amendment Claim

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a *prima facie* case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002). However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). To maintain such a claim, a plaintiff

must establish that he has been irrationally singled out for disparate treatment. *See id.* "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice. *See Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

In his amended complaint, Plaintiff vaguely suggests that his equal protection rights were violated. (Doc. No. 38 at 9.) Plaintiff, however, has again pled no facts suggesting that Defendants have intentionally treated him differently from other similarly situated inmates. Plaintiff's allegation amounts to nothing more than conclusory language and bald assertions. *Young*, 160 F. App'x at 266. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's Fourteenth Amendment equal protection claim.

### D. Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court concludes that it would be futile to permit Plaintiff leave to file a second amended complaint against Defendants. Plaintiff "has already had two chances to tell his story." *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019). Accordingly, "giving him further leave to amend would be futile." *Id.* Plaintiff, therefore, will not be permitted to file a second amended complaint in this matter.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss (Doc. No. 42) and dismiss Plaintiff's amended complaint (Doc. No. 38). Plaintiff will not be granted leave to file a second amended complaint in this matter. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: May 25, 2021